IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

ELECTRONICALLY FILED
Apr 06 2021
U.S. DISTRICT COURT
Northern District of WV

| | |
|---|---|
| WALTER RETTIG and BRODERICK HINKLE, on Behalf of Themselves and All Others Similarly Situated, <br><br> *Plaintiff*, <br><br> v. <br><br> ALLIANCE COAL, LLC, ALLIANCE RESOURCE PARTNERS, L.P., ALLIANCE RESOURCES OPERATING PARTNERS, L.P., ALLIANCE RESOURCE MANAGEMENT GP, LLC, METTIKI COAL WV, LLC and TUNNEL RIDGE, LLC, <br><br> *Defendants.* | CASE NO.   **2:21-CV-8 (Kleeh)** <br><br> **COLLECTIVE ACTION** <br><br> **JURY DEMANDED** |

## COLLECTIVE ACTION COMPLAINT

Plaintiffs Walter Rettig and Broderick Hinkle ("Plaintiffs"), through their undersigned counsel, individually, and on behalf of all persons similarly situated, file this Collective Action Complaint ("Complaint"), seeking all available remedies under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq*. Plaintiffs assert their FLSA claims as a collective action under FLSA Section 16(b), 29 U.S.C. § 216(b). The following allegations are based on personal knowledge as to Plaintiffs' own conduct and are made on information and belief as to the acts of others:

## INTRODUCTION

1. This is an action brought on behalf of individuals who are current and former coal miners employed by Defendants, challenging Defendants' unlawful failure to pay for "off-the-clock" work in violation of the FLSA as well as Defendants' failure to pay all overtime, including

by unlawfully excluding promised, non-discretionary bonuses in the calculation of the employees' "regular rate" for the purpose of determining the appropriate overtime rates of pay.

2.      Defendants Alliance Coal, LLC, Alliance Resource Partners, L.P., Alliance Resources Operating Partners, L.P., Alliance Resource Management GP, LLC, Mettiki Coal WV, LLC, and Tunnel Ridge, LLC (collectively, "Defendants") operated as joint employers of Plaintiffs and all employees who worked as miners in Defendants' Mettiki Mountain View Mine ("Mettiki") in Tucker County, West Virginia, and Defendants' Tunnel Ridge Mine in Wheeling, West Virginia ("Tunnel Ridge") (collectively, the "West Virginia Mines"), and Defendants' policies and practices deprived Plaintiff and similarly situated coal miners for all pay that they were and are entitled to by law.

## JURISDICTION AND VENUE

3.      Pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. § 1331, this Court has subject matter jurisdiction over Plaintiffs' FLSA claims.

4.      Pursuant to Fed. R. Civ. P. 4(k)(1)(A), W. Va. Code § 56-3-33, and federal due process, the Court has general and specific personal jurisdiction over all Defendants. All Defendants maintain continuous and systematic contacts with West Virginia, as they all jointly operate the Mettiki and Tunnel Ridge Mines located therein. Defendants Alliance Coal, LLC ("Alliance"), Alliance Resource Operating Partners, L.P, ("AROP"), Alliance Resource Management GP, LLC ("ARM"), and Alliance Resource Partners, L.P. ("ARLP") (ARLP, AROP, ARM and Alliance are together the "Parent Defendants") are the parent entities that own and control each of the subsidiary Defendants Mettiki Coal and Tunnel Ridge. (Mettiki Coal and

2

Tunnel Ridge are together the "Subsidiary Defendants").[1] Defendants operate as essentially the same entity, and the Parent Defendants have implemented all policies, protocols, guidelines, and internal monitoring systems used in the West Virginia Mines. All Defendants have availed themselves of West Virginia, because they have regularly conducted business in West Virginia, and because the FLSA violations occurred in West Virginia.

5.  Venue in this Court is proper pursuant to 28 U.S.C. § 1391. Defendants reside in West Virginia, and a substantial part of the events giving rise to Plaintiffs' and Collective Members' claims occurred within this judicial District and Division. Defendants conduct business in this judicial District and Division. Specifically, the Parent Defendants own and operate the Subsidiary Defendants, and employed Plaintiffs and similarly situated coal miners at the West Virginia Mines, who are the subject of the alleged unlawful pay practices.

## PARTIES

6.  Plaintiff Walter Rettig is a resident of Tucker County, West Virginia. Plaintiff Rettig was employed by Defendants as a coal miner in the Mettiki Mine between approximately February 2019 and August 2020. Plaintiff Rettig was jointly employed by Defendants. Pursuant to 29 U.S.C. § 216(b), Plaintiff Rettig has consented in writing to being a Plaintiff in this action.

7.  Plaintiff Broderick Hinkle is a resident of Upshur County, West Virginia. Plaintiff Hinkle was employed by Defendants as a coal miner in the Mettiki Mine between approximately August 2017 and January 2019. Plaintiff Hinkle was jointly employed by Defendants. Pursuant to 29 U.S.C. § 216(b), Plaintiff Hinkle has consented in writing to being a Plaintiff in this action.

---

[1] According to ARLP's annual report on form 10K, which was filed with the U.S. Securities and Exchange Commission on February 20, 2020, Defendant ARLP owns 98.9899% of the interest in Defendant AROP, which in turns owns 99.999% of the interest in Defendant Alliance, which in turn owns 100% of the interest in Defendants Mettiki and Tunnel Ridge.

8. Defendant Alliance Coal, LLC is a for-profit limited liability company organized under the laws of the state of Delaware, with its principal place of business being located at 1717 S. Boulder Avenue, Tulsa, Oklahoma 74119-4886.

9. Defendant Alliance Resource Partners, L.P. is a for-profit limited partnership organized under the laws of the state of Delaware, with its principal place of business being located at 1717 S. Boulder Avenue, Tulsa, Oklahoma 74119-4886.

10. Defendant Alliance Resource Operating Partners, L.P. is, upon information and belief, a for-profit limited partnership organized under the laws of the state of Delaware, with its principal place of business being located at 1717 S. Boulder Avenue, Tulsa, Oklahoma 74119-4886.

11. Defendant Alliance Resource Management GP, LLC is, upon information and belief, a for-profit limited liability company organized under the laws of the state of Delaware, with its principal place of business being located at 1717 S. Boulder Avenue, Tulsa, Oklahoma 74119-4886.

12. Defendant Mettiki Coal, LLC operated the Mountain View Mine, which is an underground mine employing room-and-pillar mining techniques to produce high-sulfur coal. Mettiki is a for-profit limited liability company organized under the laws of the state of Delaware, with its principal place of business being located at 1717 South Boulder Avenue, Tulsa, Oklahoma 74119-4886.

13. Upon information and belief, Mettiki is a wholly-owned subsidiary of Alliance Coal, LLC (which is in turn a subsidiary of the other Parent Defendants) and its employment policies and procedures, described below, are uniformly established and directed by the Parent Defendants.

14. Defendant Tunnel Ridge, LLC, located in Wheeling, West Virginia, operates the Tunnel Ridge Mine. Tunnel Ridge is a for-profit limited liability company organized under the laws of the state of Delaware, with its principal place of business being located at 1717 South Boulder Avenue, Tulsa, Oklahoma 74119-4886.

15. Upon information and belief, Tunnel Ridge is a wholly-owned subsidiary of Alliance Coal, LLC (which is in turn a subsidiary of the other Parent Defendants), and its employment policies and procedures, described below, are uniformly established and directed by the Parent Defendants.

16. Upon information and belief, each Parent Defendant exerted and exerts supervisory control over all employees (including Plaintiff) of the West Virginia mines, and was involved in the daily operations of the business of the West Virginia Mines as it pertains to the policies, processes and procedures for the compensation of all such employees, as described in more detail below.

17. At all times material to this action, Defendants have been engaged in commerce or in the production of goods for commerce as defined by the FLSA.

18. Defendants' employees are engaged in interstate commerce and handle or work on goods that have been moved in and/or produced in commerce.

19. Defendants' annual gross volume of sales made or business done exceeds $500,000.

20. The unlawful acts alleged in this Complaint were committed by Defendants and/or their officers, agents, employees, or representatives, including as alter egos of one another, while actively engaged in the management of Defendants' businesses or affairs and with the authorization of Defendants.

21. During all times relevant, Plaintiffs were employees of Defendants and are covered

by the FLSA.

22. During all times relevant, Defendants are employers and/or enterprises covered by the FLSA.

23. Defendants employ individuals in West Virginia, as well as potentially other states.

## COLLECTIVE DEFINITION

24. Plaintiffs bring Count I of this lawsuit pursuant to the FLSA, 29 U.S.C. § 216(b), as a collective action on behalf of themselves and the following collective:

> All current and former non-exempt employees who performed work in underground mines or surface coal preparation plants at the West Virginia Mines, and who were employed by Defendants between April 6, 2018 and the present (the "FLSA Collective").

25. The employees who constitute the FLSA Collective are referred to as Coal Miners.

26. Plaintiffs reserve the right to redefine the Collective prior to notice or collective certification, and thereafter as may be warranted or necessary.

## STATEMENT OF FACTS

**A.  Defendants' Mining Operations and Operational Structure**

27. Defendants comprise and hold themselves out to be the single entity Alliance -- "the second largest coal producer in the eastern United States." *See* https://www.arlp.com/peer/about-us/default.aspx (last visited April 5, 2021).

28. Defendants operate seven underground mining complexes in West Virginia, Illinois, Indiana, Kentucky and Maryland.  These operations include the West Virginia Mines.

29. Each of the Defendants are joint employers of the Coal Miners, as Defendants' operations are interrelated and share common management.  While the Subsidiary Defendants

6

purport to operate the West Virginia Mines, the Parent Defendants, ARLP, AROP and Alliance, control every significant aspect of their subsidiaries' coal mining operations.

30. The Parent Defendants maintain operational control over the day-to-day functions of Plaintiffs and the members of the Collective.

31. In particular, the Parent Defendants jointly controlled and directed the employment policies and practices, including the illegal pay practices of their subsidiaries, by directing such subsidiaries to follow the uniform time-keeping and pay practices of the Parent Defendants, which the Parents Defendants applied uniformly to all of their subsidiaries and the subsidiaries' employees. Accordingly, each Parent Defendant was a joint employer of the Coal Miners who work at the West Virginia Mines.

32. Among other things, the Parent Defendants required their subsidiaries, including the Mettiki and Tunnel Ridge Mines, to utilize the Parent Defendants' proprietary time-keeping hardware and software system developed by another ARLP subsidiary, Matrix Design Group, LLC, as the exclusive means for its subsidiaries to record the time worked and to determine the times periods for which these subsidiaries would pay for work performed by their employees.

33. Parent Defendants and Subsidiary Defendants are joint employers as: (1) each Subsidiary Defendant installed the same tracking system and time-keeping system provided by the Matrix Entities; (2) each Subsidiary Defendant chose, in the same way, to willfully ignore the data generated by that system regarding work performed prior to the scheduled beginning of shifts and instead pay workers only from the scheduled beginning of the shifts; (3) the data available to each Subsidiary Defendant were also available to Parent Defendants.

34. In addition to exercising authority to hire, fire, discipline, and otherwise exercise payroll, scheduling and human-resources-related control over the Subsidiary Defendants, the

Parent Defendants also exercised control over the pay rates and insurance benefits provided by the Subsidiary Defendants to their nominal employees.

35. In addition, the Parent Defendants supervised the actual work performed by the nominal employees of the Subsidiary Defendants. For instance, the Subsidiary Defendants would receive directions from the Parent Defendants regarding how their workers should perform mining operations and in what direction workers should mine for coal.

36. Upon information and belief, the Parent Defendants expressly supervise and control the policies and practices utilized by the Subsidiary Defendants to pay Plaintiffs and Coal Miners, including the policies and practices alleged in this Complaint.

**B.     The Work Performed by Plaintiffs and Coal Miners**

37. Plaintiffs worked as Coal Miners in the West Virginia Mines.

38. Plaintiffs and other Coal Miners are not members of a union.

39. Plaintiffs and Coal Miners work long hours on day and night shifts to keep the mines operating, and in order for Defendants to maximize their profits. Plaintiffs typically worked five to seven days per week.

40. The work that Plaintiffs and other Coal Miners perform is hazardous and dangerous.

41. The Supreme Court of the United States has long recognized the special difficulties involved in the job of mining coal as follows:

> Those who are forced to travel in underground mines in order to earn their livelihood . . . must journey beneath the crust of the earth, far removed from the fresh and open air and from the beneficial rays of the sun. … A heavy toll is exacted from those whose lot it is to ride and walk and mine beneath the surface. From the moment they enter the portal until they leave they are subjected to constant hazards and dangers; they are left begrimed and exhausted by their continuous physical and mental exertion.

Jewell Ridge Coal Corp. v. Loc. No. 6167, United Mine Workers of Am., 325 U.S. 161, 162 (1945).

42. Plaintiffs and Coal Miners routinely work more than forty hours in a workweek.

43. Plaintiffs and other Coal Miners were paid on an hourly basis at an agreed hourly rate, and in addition were entitled to be paid and were paid various types of bonuses.

44. Plaintiffs and other Coal Miners are not paid for all of the time that they spend performing work, including work performed both before and after their regularly scheduled shifts.

45. Defendants required Plaintiffs and Coal Miners to arrive to their work shifts sufficiently early to have time to don protective gear and be dressed and ready prior to the beginning of their shifts and to attend safety meetings prior to the beginning of their shifts.

46. However, Defendants never paid Plaintiffs and Coal Miners for the time spent working prior to beginning of their scheduled shift or for safety meetings; Defendants would only begin paying Plaintiffs and Coal Miners for work at the scheduled beginning of their shifts.

47. During the time that Plaintiffs and Coal Miners were required to be present at the mine prior to the scheduled beginning of their shift, Plaintiffs and Coal Miners routinely performed a variety of activities that constituted compensable work, including the following:

    a. Retrieving specialized protective gear and clothing from lockers and/or buckets located at the mine's above-ground bathhouse;

    b. Donning specialized protective equipment and clothing issued by the Defendants and required for the dangerous environment of an underground coal mine, including coveralls, boots, helmet, lamp, reflective gear, work belt, self-rescuer, text-pager tracking device, hearing protection, safety glasses, respirator, and gloves;

    c. Gathering tools to be used during scheduled shift from an above-ground storeroom; and

    d.  Gathering materials to be used during scheduled shift also from an above-ground storeroom.

  48.  In addition, at the end of each shift, Plaintiffs and Coal Miners were required to perform the time-consuming task of doffing their specialized protective equipment, returning tools and supplies to the appropriate location, returning their gear to their lockers and readying equipment for use on future shifts. This work took a substantial amount of time.

  49.  However, Defendants did not pay Plaintiffs and Coal Miners for this time. Defendants stopped paying Plaintiffs and the Coal Miners at the time they came above-ground and did not pay them for doffing their specialized protective equipment or any other work.

  50.  All of the pre-shift and post-shift work performed was an integral and indispensable part of the principal work activities of Plaintiffs and Coal Miners.

  51.  Defendants were aware that Plaintiffs and Coal Miners performed this work before and after their shift, both because they required these activities to be performed and because they employed and had the ability to use sophisticated technology that provided detailed information to Defendants about the times that each employee reported to work prior to the scheduled beginning of their shifts and performed work off the clock.

  52.  Specifically, Defendants installed "tracker" devices capable of following and recording the exact location of each miner attached to each miner's helmet, and Defendants required the helmets to be worn by the miner at all times in the workplace. The tracking system is not merely capable of recording the current location of each miner's tracker device, but also is capable of recording and preserving in Defendants' data systems the exact time each miner moves to a new location.

53. Although Defendants' system was capable of automatically recording the exact time when Plaintiffs and the Coal Miners would arrive at the facility to begin work, Defendants did not utilize that time for the purpose of paying Plaintiffs and other Coal Miners.

54. Rather, Defendants failed to pay any coal mining employees for their time expended in compensable activities prior to the scheduled beginning of the shift; and instead, Defendants would only pay Plaintiffs and the members of the Collective from the time that their shift was scheduled to begin.

**C.     Defendants Did Not Pay the Proper Overtime Rate to Plaintiffs and Coal Miners**

55. In addition to not paying Plaintiffs and Coal Miners for time spent working before and after their shifts, Defendants also failed to pay Plaintiffs and similarly situated employees the appropriate overtime rate of compensation for overtime work performed.

56. Plaintiffs and similarly situated employees were paid several forms of bonus compensation that were not discretionary, and therefore, should have been included in their "regular rate" of compensation for determining their overtime rate of compensation.

57. Upon information and belief, Defendants provided their employees a "*Benefits Handbook*," which described certain bonus compensation to which Plaintiffs would be entitled as part of Plaintiffs' compensation for their work for Defendants.

58. Non-discretionary bonuses included, among others:

   a. An annual Attendance Incentive Bonus;

   b. A New Electrical Certification bonus;

   c. A New Mine Foreman certification bonus;

   d. An annual Emergency Medical Technician Certification Bonus;

   e. An annual Mine Emergency Technician Certification Bonus;

      f.      An annual seniority days bonus starting at each employee's sixth year of service, giving a bonus of one "day" or eight (8) hours of regular pay in the first year of eligibility, and with an additional 8 hours of pay accruing each year (with the maximum accrual being twenty (20) days);

      g.      A Weekly Production Bonus based on productivity and man hours, utilizing a formula that took into account the amount of coal mined during the week in the mine in question, the percentage of the coal mined which was "clean," the number of employee hours expended to mine the coal, and similar objectively-quantifiable facts;

      h.      A Safety Incentive Bonus that was calculated based on a formula derived from objective data.

59.    Defendants paid these bonuses to Plaintiffs and similarly situated employees, but they failed to include certain of such bonuses in the "regular rate" used to calculate the overtime rate of pay for Plaintiffs and similarly situated employees in the weeks that the bonuses were paid. Defendants' failure resulted in Plaintiffs and similarly situated employees receiving lower overtime rates than they were owed for the weeks in which the bonuses were paid.

60.    These bonuses should have been included in calculating employees' overtime rates of pay.

61.    Additionally, the Plaintiffs and similarly situated employees were not compensated for the full amount of overtime that they were owed each week, because, upon information and belief, Defendants included a type of implicit overtime premium it referred to as the "boosted hours method" in the formula used to calculate two types of bonuses (production and safety bonuses), but this formula did not compensate Plaintiffs and similarly situated employees for the full overtime

premium owed because the number of hours used by Defendants in the "boosted hours" formula was based on the number of hours Defendants credited the employees with working and therefore did not include all time worked as described above.

62. Defendants knew or should have known that the work that they required of Plaintiffs and other Coal Miners should have been paid for all time worked before and after their regularly scheduled shift under the FLSA.

63. Defendants knew or should have known that the non-discretionary bonuses that they paid should have been properly incorporated into the regular rate for purposes of calculating overtime compensation under the FLSA.

64. Defendants are sophisticated national businesses with access to knowledgeable human resource specialists and competent labor counsel.

65. Defendants do not maintain accurate records of the actual hours that Plaintiffs and Coal Miners worked each workday and the total hours worked each workweek.

66. Defendants have acted willfully and with reckless disregard of clearly applicable FLSA and state law wage and hour provisions by failing to compensate Plaintiffs and Coal Members for all hours worked in excess of forty (40) during the workweeks.

## COLLECTIVE ACTION ALLEGATIONS

67. Plaintiffs bring this lawsuit pursuant to 29 U.S.C. § 216(b) as a collective action on behalf of the FLSA Collective defined above.

68. Plaintiffs desire to pursue their FLSA claim on behalf of any individuals who opt-in to this action pursuant to 29 U.S.C. § 216(b).

69. Plaintiffs and the FLSA Collective are "similarly situated," as that term is used in 29 U.S.C. § 216(b), because, *inter alia*, all such individuals worked pursuant to the Defendants'

previously described common pay and timekeeping practices and, as a result of such practices, were not paid the full and legally mandated minimum wage for non-overtime hours and overtime premium for hours worked over forty (40) during the workweek. Resolution of this action requires inquiry into common facts, including, *inter alia*, Defendants' common compensation, timekeeping and payroll practices.

70. The FLSA Collective Members have the same or closely similar job duties as the Plaintiffs, and all Plaintiffs and Collective Members were paid by Defendants in the same manner, in violation of the FLSA. Accordingly, the named Plaintiffs are similarly situated to all FLSA Collective Members.

71. Plaintiffs and the FLSA Collective performed the same type of work, the manner and terms of which were controlled by the Defendants, and were not paid for all time worked or at the proper overtime rate as required by federal law.

72. The similarly situated employees are known to Defendants, are readily identifiable, and may be located through Defendants' records.

73. Defendants employ many FLSA Collective Members throughout West Virginia. These similarly situated employees may be readily notified of this action through direct U.S. mail and/or other appropriate means, and allowed to opt into it pursuant to 29 U.S.C. § 216(b) for the purpose of collectively adjudicating their claims for overtime compensation, liquidated damages (or, alternatively, interest), and attorneys' fees and costs under the FLSA.

**COUNT I**
**Violation of the FLSA - Overtime**
**(On Behalf of the Plaintiffs and the FLSA Collective)**

74. All previous paragraphs are incorporated as though fully set forth herein.

75. The FLSA requires that covered employees be compensated for all hours worked in excess of forty (40) hours per week at a rate not less than one and one-half (1 ½) times the

regular rate at which he or she is employed. *See* 29 U.S.C. § 207(a)(1).

76. The FLSA defines the "regular rate" as including "all remuneration for employment paid to, or on behalf of, the employee …." 29 U.S.C. § 207(e).

77. With a few limited exceptions, all remuneration given to an employee must be included in the employee's regular rate calculation. 29 U.S.C. § 207(e); 29 C.F.R. § 778.108.

78. Defendants are subject to the wage requirements of the FLSA because each of the Defendants is an "employer" under 29 U.S.C. § 203(d).

79. At all relevant times, each of the Defendants was an "employer" engaged in interstate commerce and/or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 203.

80. During all relevant times, Plaintiffs and Collective Members were covered employees entitled to the above-described FLSA protections. *See* 29 U.S.C. § 203(e).

81. Plaintiffs and Collective Members are not exempt from the requirements of the FLSA.

82. Plaintiffs and Collective Members are entitled to be paid overtime compensation for all hours worked over forty (40) in a workweek pursuant to 29 U.S.C. § 207(a)(1).

83. Defendants' compensation scheme applicable to Plaintiffs and Collective Members failed to comply with either 29 U.S.C. § 207(a)(1) or 29 C.F.R. § 778.112.

84. Defendants knowingly failed to compensate Plaintiffs and Collective Members for all hours worked when they worked in excess of forty (40) hours per week and failed to pay proper overtime premiums at a rate of one and one-half (1 ½) times their regular hourly wage, in violation of 29 U.S.C. § 207(a)(1) and 29 C.F.R. § 778.112. More specifically, Defendants have failed to include non-discretionary bonuses in calculating the Plaintiffs' and Collective members' "regular

rate" for the purpose of calculating the applicable time-and-a-half overtime premium, and Defendants have failed to compensate Plaintiffs and Collective Members for off-the-clock work.

85. Defendants also failed to create, keep and preserve records with respect to work performed by the Plaintiffs and the FLSA Collective sufficient to determine their wages, hours and other conditions of employment in violation of the FLSA, 29 U.S.C.A. § 211(c); 29 C.F.R. §§ 516.5(a), 516.6(a)(1), 516.2(c).

86. In violating the FLSA, Defendants acted willfully and with reckless disregard of clearly applicable FLSA provisions.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs seek the following relief on behalf of themselves and all others similarly situated:

    a. An order permitting this litigation to proceed as an FLSA collective action pursuant to 29 U.S.C. § 216(b);

    b. Prompt notice, pursuant to 29 U.S.C. § 216(b), of this litigation to all potential FLSA Collective members;

    c. For unpaid wages as may be owed and prejudgment interest to the fullest extent permitted under the law;

    d. Liquidated damages to the fullest extent permitted under the law;

    e. Litigation costs, expenses and attorneys' fees to the fullest extent permitted under the law; and

    f. Such other and further relief as this Court deems just and proper.

## **JURY DEMAND**

Plaintiffs demand a trial by jury for all issues of fact.

|  |  |
|---|---|
| April 6, 2021 | Respectfully submitted,<br><br>*/s/ Thomas R. Goodwin*<br>Thomas R. Goodwin (WV Bar No. 1435)<br>W. Jeffrey Vollmer (WV Bar No. 10277)<br>Goodwin & Goodwin, LLP<br>300 Summer Street<br>Suite 1500<br>Charleston, WV 25301<br>(304) 346-7000<br>trg@goodwingoodwin.com<br>wjv@goodwingoodwin.com |