```
                IN THE UNITED STATES DISTRICT COURT
              FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
                               ELKINS
```

**WALTER RETTIG and BRODERICK HINKLE,**
on Behalf of Themselves and All
Others Similarly Situated,

        **Plaintiffs,**

v.                                                                    CIVIL ACTION NO. 2:21-CV-08
                                                                                                   (KLEEH)

**ALLIANCE COAL, LLC,**
**ALLIANCE RESOURCE PARTNERS L.P.,**
**ALLIANCE RESOURCE OPERATING PARTNERS, L.P.,**
**ALLIANCE RESOURCE MANAGEMENT GP, LLC,**
**METTIKI COAL (WV), LLC, and**
**TUNNEL RIDGE, LLC,**

        **Defendants.**

**MEMORANDUM OPINION AND ORDER DENYING ALLIANCE COAL LLC, ALLIANCE RESOURCE PARTNERS LP, ALLIANCE RESOURCES OPERATING PARTNERS LP, AND ALLIANCE RESOURCE MANAGEMENT GP, LLC'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION [ECF NO. 36]**

    Pending before the Court is *Motion to Dismiss for Lack of Personal Jurisdiction* filed by Defendants Alliance Coal, LLC, Alliance Resource Partners, L.P., Alliance Resource Operating Partners, L.P., and Alliance Resource Management GP, LLC ("Alliance Defendants"). ECF No. 36. For the reasons discussed herein, the Motion is **DENIED**.

                              **I.   PROCEDURAL HISTORY**

    On April 6, 2021, Plaintiffs Walter Rettig and Broderick Hinkle ("Plaintiffs") filed a Collective Action Complaint. ECF No. 1. On April 8, 2021, all Defendants, by counsel, waived service.

ECF No. 2. Thereafter, counsel appearing locally and *pro hac vice* noticed their appearances. The parties filed a joint stipulation extending all Defendants' time to answer from June 7, 2021, to June 28, 2021. ECF No. 22. The parties filed a joint motion for extension of time to file the report of planning meeting, which was granted by order on June 14, 2021. ECF No. 29. The report of planning meeting was timely filed on June 18, 2021. ECF No. 30.

Thereafter, the following motions were filed: Defendants' Motion to Trifurcate Case Management Schedule and Discovery [ECF No. 31], Plaintiffs' Motion for Conditional Certification [ECF No. 32], Defendant Tunnel Ridge's Motion to Dismiss [ECF No. 34], and the Alliance Defendants' Motion to Dismiss [ECF No. 36].

The Alliance Defendants' Motion to Dismiss ("motion") [ECF No. 36] is ripe for decision and is the subject of this Memorandum Opinion and Order.

## II.   COMPLAINT

In the Complaint, Plaintiffs assert one cause of action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, et seq., namely 29 U.S.C. § 216(b). Plaintiffs specifically alleged Defendants' unlawful failure to pay for "off-the-clock" work and overtime in violation of FLSA. Compl., ECF No. 1.

a. **Parties**

Each Defendant company and partnership is organized under the

**MEMORANDUM OPINION AND ORDER DENYING MOTION TO DISMISS [ECF NO. 36]**

laws of the state of Delaware with a principal place of business located in the state of Oklahoma. See Compl., ECF No. 1, ¶¶ 8-23.

Alliance Coal, LLC ("ACL") is a for-profit limited liability company. Alliance Resource Partners L.P ("ARLP") is a for-profit limited partnership. Alliance Resource Operating Partners, L.P. ("AROP") is a for-profit limited partnership. Alliance Resource Management GP, LLC ("MGP") is a for-profit limited liability company. ACL, AROP, MGP, and ARLP are referred to as the Parent Defendants, as Plaintiffs allege they are the parent entities that own and control both Mettiki Coal WV, LLC and Tunnel Ridge, LLC. Id. ¶ 4.

Mettiki Coal WV, LLC ("Mettiki") operated the Mountain View Mine, which is an underground mine employing room-and-pillar mining techniques to produce high-sulfur coal. Mettiki Coal WV, LLC is a for-profit limited liability company. Finally, Tunnel Ridge, LLC ("Tunnel Ridge") is located in Wheeling, West Virginia, and operates the Tunnel Ridge Mine. Tunnel Ridge is a for-profit limited liability company. Together, Mettiki and Tunnel Ridge are referred to as the Subsidiary Defendants. Id. ¶ 4.

b. Facts

The action is brought on behalf of "[a]ll current and former non-exempt employees who performed work in underground mines or surface coal preparation plants at the West Virginia Mines, and

**MEMORANDUM OPINION AND ORDER DENYING MOTION TO DISMISS [ECF NO. 36]**

who were employed by Defendants between April 6, 2018 and the present (the "FLSA Collective")." Id. ¶ 24. Named plaintiffs were employed by Defendants as coal miners in the Mettiki Mine for various time periods. Id. ¶¶ 6-7. Mettiki owns and operates the Mountain View Mine in West Virginia where Plaintiffs performed work. Id. ¶ 12. Upon information and belief, Mettiki is a wholly-owned subsidiary of Alliance Coal, LLC - which is in turn a subsidiary of the other Parent Defendants - and its employment policies and procedures are uniformly established and directed by the Parent Defendants. Id. ¶ 13. Plaintiffs maintain this Court has general and specific jurisdiction over the defendants pursuant to Fed. R. Civ. P. 4(k)(1)(A) and W. Va. Code § 56-3-33. Id. ¶ 4.

Defendants operate seven underground mines in the states of West Virginia, Illinois, Indiana, Kentucky and Maryland. Id. ¶ 28. Each of the Defendants are joint employers of the Coal Miners, as Defendants' operations are interrelated and share common management. While the Subsidiary Defendants purport to operate the West Virginia Mines, the Parent Defendants control the significant aspects of their subsidiaries' coal mining operations. Id. ¶ 29. In addition to exercising authority to hire, fire, discipline, and distribute payroll, the Parent Defendants also exercised control over the pay rates and insurance benefits provided by the Subsidiary Defendants to their nominal employees. Id. ¶ 34.

Plaintiffs are not members of a union. Id. ¶ 38. Plaintiffs allege Defendants' failure to pay for the work done before or after shifts, and any overtime work performed, is a violation under the FLSA. The FLSA requires that covered employees be compensated for all hours worked in excess of forty (40) hours per week at a rate not less than one and one-half (1 ½) times the regular rate at which he or she is employed. See 29 U.S.C. § 207(a)(1). Id. ¶ 75. Defendants allegedly failed to create, keep and preserve records with respect to work performed by the plaintiffs and the FLSA Collective sufficient to determine their wages, hours and other conditions of employment in violation of the FLSA. Id. ¶ 85.

### III. LEGAL STANDARD

When a defendant files a Federal Rule of Civil Procedure 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the ultimate burden of showing that jurisdiction exists by a preponderance of the evidence. New Wellington Fin. Corp. v. Flagship Resort Dev. Corp., 416 F.3d 290, 294 (4th Cir. 2005). However, where a court makes a Rule 12(b)(2) determination without a hearing and based only on the written record, as the Court does here, the plaintiff need only put forth a prima facie showing of jurisdiction "by pointing to affidavits or other relevant evidence." Henderson v. Metlife Bank, N.A., No. 3:11-cv-20, 2011 WL 1897427, at *6 (N.D.W. Va. May 18, 2011); see also New

Wellington Fin. Corp., 416 F.3d at 294. The Court must then "construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." New Wellington Fin. Corp., 416 F.3d at 294; see also 5B Wright & Miller, Federal Practice and Procedure § 1351 (3rd. ed.).

Under Rule 4(k)(1)(A) of the Federal Rules of Civil Procedure, a federal district court may exercise personal jurisdiction over a defendant to the same degree that a counterpart state court could do so. See Diamond Healthcare of Ohio, Inc. v. Humility of Mary Health Partners, 229 F.3d 448, 450 (4th Cir. 2000). Importantly as a result, for a district court to have jurisdiction over a nonresident defendant, the exercise of jurisdiction (1) must be authorized under the state's long-arm statute, and (2) must comport with the due process requirements of the Fourteenth Amendment. Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc., 334 F.3d 390, 396 (4th Cir. 2003) (citing Christian Sci. Bd. of Dirs. of the First Church of Christ v. Nolan, 259 F.3d 209, 215 (4th Cir. 2001)). As West Virginia's long-arm statute provides jurisdiction to the full extent allowable under the United States Constitution, see W. Va. Code § 56-3-33, the Court need only consider whether the exercise of personal jurisdiction would comport with the Due Process Clause.

West Virginia Code § 31D-15-1501 deems a foreign corporation to be transacting business in West Virginia if:

> (1) the corporation makes a contract to be performed, in whole or in part, by any party thereto, in West Virginia;
> (2) the corporation commits a tort, in whole or in part, in West Virginia; or
> (3) the corporation manufactures, sells, offers for sale or supplies any product in a defective condition and that product causes injury to any person or property within West Virginia.

For a district court to assert jurisdiction over a nonresident defendant within the confines of due process, the defendant must have "minimum contacts" with the forum state such that it is consistent with "fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). The Fourth Circuit states that an out-of-state defendant must have minimum contacts that are purposeful to help "ensure that non-residents have fair warning that a particular activity may subject them to litigation within the forum." In re Celotex Corp., 124 F.3d 619, 628 (4th Cir. 1997).

A court analyzes whether a defendant possesses such minimum contacts by looking to whether the plaintiff seeks to establish "specific" or "general" jurisdiction. Specific jurisdiction is exercised when the defendant's contacts with the forum state form the basis of the suit. Carefirst, 334 F.3d at 397. In determining whether a defendant's contacts support the exercise of specific

jurisdiction, a district court considers the following: "(1) the extent to which the defendant has purposefully availed itself of the privilege of conducting activities in the state; (2) whether the plaintiff's claims arise out of those activities directed at the state; and (3) whether the exercise of personal jurisdiction would be constitutionally 'reasonable.'" Id. at 396.

Where the defendant's contacts are unrelated to the basis of the suit, a court must look to the requirements of general jurisdiction. Id. at 397. The standard for finding the existence of general jurisdiction is high: the defendant must have "continuous and systematic" contacts with the forum state. Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 416(1984); see also ESAB Group, Inc. v. Centricut, 126 F.3d 617, 623 (4th Cir. 1997) ("[T]he threshold level of minimum contacts sufficient to confer general jurisdiction is significantly higher than for specific jurisdiction."). The hallmark of general jurisdiction is that the defendant's contacts with the forum state are so extensive that it should reasonably foresee being haled into court there. World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980).

## IV. DISCUSSION

Alliance Defendants' motion to dismiss [ECF No. 36] is based upon the assertion that Plaintiffs cannot establish this Court has

personal jurisdiction over them. Alliance Defendants filed the motion pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, arguing the Court lacks general and specific personal jurisdiction over Alliance Defendants. ECF No. 36. Alliance Defendants attached two (2) exhibits to the motion and memorandum of law in support: Declaration of Thomas M. Wynne [ECF No. 36-2, Ex. A], and Declaration of William S. Burow [ECF No. 36-3, Ex. B].

Plaintiffs responded in opposition to the motion arguing Defendants are subject to personal jurisdiction and the complaint survives dismissal because Defendants availed themselves of the privilege of conducting business in West Virginia. ECF No. 47. Plaintiffs' alternative request is that the Court allow the parties to engage in jurisdictional discovery. Id. Plaintiff attached forty-eight (48) exhibits to the response. Id.

   a. **Plaintiffs meet their _prima facie_ burden in the specific personal jurisdiction inquiry. Fed. R. Civ. P. 12(b)(2).**

Plaintiffs meet their _prima facie_ burden in the personal jurisdiction inquiry; therefore, the motion to dismiss must be denied on this ground. Fed. R. Civ. P. 12(b)(2). The Court's analysis turns on three factors: "(1) the extent to which the defendant has purposefully availed itself of the privilege of conducting activities in the state; (2) whether the plaintiff's claims arise out of those activities directed at the state; and (3) whether the exercise of personal jurisdiction would be

**MEMORANDUM OPINION AND ORDER DENYING MOTION TO DISMISS [ECF NO. 36]**

constitutionally 'reasonable.'" Carefirst, 334 F.3d at 396. "The relationship [among the defendant, the forum, and the litigation] must arise out of contacts that the 'defendant himself' creates with the forum State." Walden v. Fiore, 571 U.S. 277 (2014) (citing Burger King Corp. v. Rudzewicz, 471 U. S. 462, 475 (1985)). "Fairness is the touchstone of the jurisdictional inquiry." Universal Leather, LLC v. Koro AR, S.A., 773 F.3d 553, 559 (4th Cir. 2014) (internal quotation and citation omitted).

In the business context, the purposeful availment evaluation weighs a number of factors: (1) "whether the defendant maintains offices or agents in the forum state;" (2) "whether the defendant owns property in the forum state;" (3) "whether the defendant reached into the forum state to solicit or initiate business;" (4) "whether the defendant deliberately engaged in significant or long-term business activities in the forum state;" (5) "whether the parties contractually agreed that the law of the forum state would govern disputes;" (6) "whether the defendant made in-person contact with the resident of the forum in the forum state regarding the business relationship;" (7) "the nature, quality and extent of the parties' communications about the business being transacted;" and (8) "whether the performance of contractual duties was to occur within the forum." Universal Leather, LLC v. Koro AR, S.A., 773 F.3d 553, 559 (4th Cir. 2014), (quoting Consulting Eng'rs Corp. v.

10

Geometric Ltd., 561 F.3d 273, 278 (4th Cir. 2009) (citations omitted)). Generally, a "foreign defendant has purposefully availed itself of the privilege of conducting business in the forum state when the defendant substantially collaborated with a forum resident and that joint enterprise constituted an integral element of the dispute." Universal Leather, 773 F.3d at 559; (quoting Tire Eng'g v. Shandong Linglong Rubber Co., 682 F.3d 292, 302 (4th Cir. 2012) (internal quotations omitted)). In contrast, purposeful availment is absent in cases where "the locus of the parties' interaction was overwhelmingly abroad." Tire Eng'g, 682 F.3d at 302.

Alliance Defendants argue the Court does not have personal jurisdiction over them because there are insufficient minimum contacts with the forum state and therefore asserting personal jurisdiction over these defendants would violate the Due Process Clause. See ECF No. 36-1. Plaintiffs allege that Alliance Defendants have sufficient contacts with West Virginia such that these defendants have availed themselves of this jurisdiction since 2009, and in some cases since 1999, and justifies the Court's exercise of specific jurisdiction. ECF No. 47 at 28-29.

Importantly, Plaintiffs allege, and the Court agrees, that the Alliance entities operated as joint employers of Plaintiffs and those who worked at the West Virginia mines. ECF No. 47 at 3.

11

Plaintiffs were governed by Alliance's policies. Id. MGP operates and manages ARLP. ECF No. 47-5, Ex. 4, Form 10-K; ECF No. 47-5-22, Ex. 21. MGP operates in West Virginia through its direct operation of ARLP since 1999. ECF No. 47-5, Ex. 4, Form 10-K; ECF No. 47-10, Ex. 9. Until 2018, and during the relevant period, AROP was also operated by MGP. ECF No. 47-5-22, Ex. 21. AROP is a "near wholly-owned subsidiary of ARLP and acts as the holding company for Alliance Coal." ECF No. 47 at 6; see also ECF No. 47-5, Ex. 4, Form 10-K. Likewise, "Alliance Coal is a near wholly-owned subsidiary of AROP and acts has a holding company for the various LLCs that own the coal mines in seven states, including Mettiki Coal WV, LLC and Tunnel Ridge, LLC, which owns the mines in West Virginia." ECF No. 47 at 6; see also ECF No. 47-5, Ex. 4, Form 10-K.

"We" is defined in Form 10-K as "the business and operations of Alliance Resource Partners, L.P., the parent company, as well as its consolidated subsidiaries." ECF No. 47-5 at 1. "As is commonly the case with publicly traded limited partnerships, we are managed and operated by our general partner [MGP]." ECF No. 47-5 at 141. The same small group of nine to thirteen officers hold positions with MGP and the other Alliance Defendants. See ECF No. 47-5 at 141, ECF No. 47-6.

Notable to the Court's discussion regarding the Alliance

Defendants' contacts, Plaintiffs provided the Court multiple exhibits, including evidence of Defendants ARLP's and ACL's substantial operational involvement in the state of West Virginia since the years of 1999 (ECF No. 47-10, Ex. 9, ARLP, West Virginia Secretary of State registry), and 2010 (Ex. 10, ECF No. 47-11, ACL, West Virginia Secretary of State registry). ACL operates two mines in the state of West Virginia and is the "second-largest coal producer in the eastern United States." ECF No. 47 at 6-7. ACL maintains at least one office in West Virginia, located at 184 Schoolhouse Lane, Valley Grove, West Virginia, and "support[s] . . . local direct mining jobs[] in . . . Ohio County, West Virginia." ECF No. 47-12, Ex. 11 at 1; ECF No. 47-14, Ex. 13. Plaintiffs submitted evidence of Alliance Defendants' employees working and "[p]rocess[ing] payroll for 425 employees weekly" in the state of West Virginia. ECF No. 47-14, Ex. 13; ECF No. 47-15, Ex. 14. AROP handles the financing for the Alliance defendants and "holds most of the bank accounts in the Alliance organization." ECF No. 47-7, Ex. 6, Davis Tr. 63:18-64:4. AROP itself "can be used to fund operation of the Alliance Resource Partners' business including the coal business." Id. 64:5-23. The accounts payable system utilized by the Alliance Defendants was used to fund Alliance Coal mine sites located in West Virginia. ECF No. 47-30, Ex. 29, Vieke Decl. ¶ 5. Alliance Coal's Vice President is a member of the West

Virginia Coal Association. ECF No. 74 at 16; ECF No. 74-37, Ex. 36.

Alliance Defendants have gone beyond the threshold for purposeful availment because Defendants have clearly reached into the state to solicit and initiate business by developing the Mountain View mine in 2005 in Tucker County, West Virginia, and announcing the opening of the Tunnel Ridge Mine in 2008 in Ohio County, West Virginia. ECF No. 47-18, Ex. 17. Alliance Defendants ran mining operations in the state of West Virginia, including the day-to-day operations. Alliance Defendants are right: corporate ownership of a subsidiary, without more, is insufficient to prove personal jurisdiction. Walton v. Wheeling Treatment Ctr., LLC, No. 5:14-CV-106, 2014 WL 5512808, at *3 (N.D.W. Va. Oct. 31, 2014). However Plaintiffs present compelling evidence that Alliance Defendants have purposefully availed themselves of the privilege of conducting business in the state of West Virginia and "the place that [] plaintiff[s] feel[] an alleged injury is plainly relevant to the inquiry." ESAB Group, Inc. v. Centricut, Inc., 126 F.3d 617, 626 (4th Cir. 1997). Alliance Defendants have had, between April 6, 2018 and the present, operations in the state of West Virginia, and have availed themselves of being haled into court in this State by their long-term business activities spanning years of time. Naturally, Alliance Coal has entered into multiple

contracts for coal delivery in West Virginia. ECF No. 47-43, Ex. 42; ECF No. 47-44, Ex. 43. Because Plaintiffs met the prima facie burden in the specific personal jurisdiction inquiry, the motion is **DENIED**. Fed. R. Civ. P. 12(b)(2).

### b. Plaintiffs meet the prima facie burden in the general personal jurisdiction inquiry. Fed. R. Civ. P. 12(b)(2).

General jurisdiction, when a defendant is so "at home" in a forum state that it is subjected to personal jurisdiction, is a more stringent burden to meet than that of specific jurisdiction. See ESAB Group, Inc. v. Centricut, Inc., 126 F.3d 617, 623 (4th Cir. 1997) ("the threshold level of minimum contacts sufficient to confer general jurisdiction is significantly higher than for specific jurisdiction."). Plaintiffs met their prima facie case of specific jurisdiction, arising out of the FLSA claim against Defendants. Defendants, however, move to dismiss the complaint arguing that they are not subject to either specific or general jurisdiction in this Court.

This Court finds that Defendants are subject to general jurisdiction because Plaintiffs have established such a continuous and systematic presence in West Virginia that Defendants are "at home" here. Based upon the written record, affidavits and all relevant evidence, Plaintiffs have shown that Defendants' contacts with the forum state rise beyond specific jurisdiction, and instead represent a 15-year large scale operation within the state of West

Virginia. The motion is likewise **DENIED** on this ground. Fed. R. Civ. P. 12(b)(2).

## V.   CONCLUSION

For the reasons discussed above, Defendants' Motion to Dismiss is **DENIED**. ECF No. 36.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Memorandum Opinion and Order to counsel of record.

**DATED:**  September 14, 2022

_Tom S Kleeh_
THOMAS S. KLEEH, CHIEF JUDGE
NORTHERN DISTRICT OF WEST VIRGINIA