```
         IN THE UNITED STATES DISTRICT COURT
      FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
                       ELKINS
```

**WALTER RETTIG and BRODERICK HINKLE,**
on Behalf of Themselves and All
Others Similarly Situated,

      Plaintiffs,

v.                                        CIVIL ACTION NO. 2:21-CV-08
                                                              (KLEEH)

**ALLIANCE COAL, LLC,**
**ALLIANCE RESOURCE PARTNERS L.P.,**
**ALLIANCE RESOURCE OPERATING PARTNERS, L.P.,**
**ALLIANCE RESOURCE MANAGEMENT GP, LLC,**
**METTIKI COAL (WV), LLC, and**
**TUNNEL RIDGE, LLC,**

      Defendants.

**MEMORANDUM OPINION AND ORDER GRANTING MOTION TO DISMISS**

Pending before the Court is *Tunnel Ridge's Motion to Dismiss for Failure to State a Claim and for Lack of Standing* filed by Defendant Tunnel Ridge, LLC ("Tunnel Ridge"). ECF No. 34. For the reasons discussed herein, the Motion is **GRANTED**.

                I.    PROCEDURAL BACKGROUND

On April 6, 2021, Plaintiffs Walter Rettig and Broderick Hinkle ("Plaintiffs") filed a Collective Action Complaint. ECF No. 1. On April 8, 2021, all Defendants, by counsel, waived service. ECF No. 2. Counsel appearing locally and *pro hac vice* noticed their appearances. The parties filed a joint stipulation extending all Defendants' time to answer from June 7, 2021, to June 28, 2021. ECF No. 22. The parties filed a joint motion for extension of time

to file the report of planning meeting, which was granted by order on June 14, 2021. ECF No. 29. The report of planning meeting was timely filed on June 18, 2021. ECF No. 30.

Thereafter, the following motions were filed: Defendants' Motion to Trifurcate Case Management Schedule and Discovery [ECF No. 31], Plaintiffs' Motion for Conditional Certification [ECF No. 32], Defendant Tunnel Ridge's Motion to Dismiss [ECF No. 34], and the Alliance Defendants'[1] Motion to Dismiss [ECF No. 36]. The Court stayed discovery deadlines pending resolution of the motions. ECF No. 109. The Parent Defendants' Motion to Dismiss [ECF No. 36] was denied by Memorandum Opinion and Order on September 14, 2022, because Plaintiffs presented sufficient evidence that the Parent Defendants had purposefully availed themselves of the privilege of conducting business in the state of West Virginia. ECF No. 118.

On February 1, 2023, the Court granted a joint motion to stay for purposes of conducting a mediation. ECF No. 142. On June 27, 2023, the parties notified the Court that mediation did not result in a resolution. ECF Nos. 164, 147, 148. The Court lifted the stay on September 1, 2023. ECF No. 152. *Tunnel Ridge's Motion to Dismiss for Failure to State a Claim and for Lack of Standing* ("motion") being fully briefed and ripe for review is the subject of this

---

[1] The Alliance Defendants, referred to herein as the Parent Defendants, are Alliance Coal, LLC, Alliance Resource Partners, L.P., Alliance Resource Operating Partners, L.P., and Alliance Resource Management GP, LLC.

Memorandum Opinion and Order. ECF No. 34.

## II.  COMPLAINT

In the Complaint, Plaintiffs bring one cause of action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, et seq., alleging violations of overtime pay. Specifically, Plaintiffs allege Defendants failed to pay for "off-the-clock" work and overtime in violation of FLSA. Compl., ECF No. 1.[2]

### a. The Parties

Each Defendant company and partnership is organized under the laws of the state of Delaware with a principal place of business located in the state of Oklahoma. See Compl., ECF No. 1, ¶¶ 8-23.

Alliance Coal, LLC ("ACL") is a for-profit limited liability company. Alliance Resource Partners L.P ("ARLP") is a for-profit limited partnership. Alliance Resource Operating Partners, L.P. ("AROP") is a for-profit limited partnership. Alliance Resource Management GP, LLC ("MGP") is a for-profit limited liability company. ACL, AROP, MGP, and ARLP – the Alliance Defendants - are referred to as the Parent Defendants, as Plaintiffs allege they are the parent entities that own and control both Mettiki Coal WV, LLC and Tunnel Ridge, LLC. Id. ¶ 4.

Mettiki Coal WV, LLC ("Mettiki") operated the Mountain View

---

[2] All facts alleged in the complaint are accepted as true and are therefore taken in the light most favorable to the plaintiffs. Smith v. Teach, No. 3:07CV49, 2007 WL 2712952, *1 (N.D.W. Va. Sept. 14, 2007).

Mine, which is an underground mine employing room-and-pillar mining techniques to produce high-sulfur coal. Mettiki Coal WV, LLC is a for-profit limited liability company. Finally, Tunnel Ridge, LLC ("Tunnel Ridge") is located in Wheeling, West Virginia, and operates the Tunnel Ridge Mine. Tunnel Ridge is a for-profit limited liability company. Together, Mettiki and Tunnel Ridge are referred to as the Subsidiary Defendants. Id. ¶ 4.

### b. The Facts

The action is brought by Plaintiffs and on behalf of "[a]ll current and former non-exempt employees who performed work in underground mines or surface coal preparation plants at the West Virginia Mines, and who were employed by Defendants between April 6, 2018 and the present (the "FLSA Collective")." Id. ¶ 24. Named plaintiffs were employed by Defendants as coal miners in the Mettiki Mine for various time periods. Id. ¶¶ 6-7. Mettiki owns and operates the Mountain View Mine in West Virginia where Plaintiffs performed work. Id. ¶ 12. Upon information and belief, Mettiki is a wholly-owned subsidiary of Alliance Coal, LLC - which is a subsidiary of the other Parent Defendants - and its employment policies and procedures are uniformly established and directed by the Parent Defendants. Id. ¶ 13. Plaintiffs maintain this Court has general and specific jurisdiction over the defendants pursuant to Fed. R. Civ. P. 4(k)(1)(A) and W. Va. Code § 56-3-33. Id. ¶ 4.

**MEMORANDUM OPINION AND ORDER GRANTING MOTION TO DISMISS**

Defendants operate seven underground mines in the states of West Virginia, Illinois, Indiana, Kentucky and Maryland. Id. ¶ 28. Plaintiffs alleged that each of the Defendants – including Tunnel Ridge - are joint employers of the Coal Miners, as Defendants' operations are interrelated and share common management. While the Subsidiary Defendants purport to operate the West Virginia Mines, the Parent Defendants control the significant aspects of their subsidiaries' coal mining operations. Id. ¶ 29. In addition to exercising authority to hire, fire, discipline, and distribute payroll, the Parent Defendants also exercised control over the pay rates and insurance benefits provided by the Subsidiary Defendants to their nominal employees. Id. ¶ 34.

Plaintiffs are not members of a union. Id. ¶ 38. Plaintiffs allege Defendants' failure to pay for the work done before or after shifts, and any overtime work performed, is a violation under the FLSA. The FLSA requires that covered employees be compensated for all hours worked in excess of forty (40) hours per week at a rate not less than one and one-half (1 ½) times the regular rate at which he or she is employed. See 29 U.S.C. § 207(a)(1). Id. ¶ 75. Defendants allegedly failed to create, keep and preserve records with respect to work performed by the plaintiffs and the FLSA Collective sufficient to determine their wages, hours and other conditions of employment in violation of the FLSA. Id. ¶ 85.

Case 2:21-cv-00008-TSK   Document 153   Filed 09/01/23   Page 6 of 18 PageID #: 2014

**Rettig & Hinkle v. Alliance Coal, LLC, et al.**                                 2:21-CV-08
**MEMORANDUM OPINION AND ORDER GRANTING MOTION TO DISMISS**

### III. **LEGAL STANDARD**

Under Rule 12(b)(1) of the Federal Rules of Civil Procedure, a party may move to dismiss a claim for lack of subject-matter jurisdiction. A defendant challenges subject matter jurisdiction in two ways: (1) "that a complaint simply fails to allege facts upon which subject matter jurisdiction can be based," or (2) "that the jurisdictional allegations of the complaint [are] not true." Kerns v. United States, 585 F.3d 187, 192 (4th Cir. 2009) (quoting Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982)). A challenge of subject matter jurisdiction in the first way, as Tunnel Ridge contends here, conjures "the same procedural protection . . . [the plaintiff] would receive under a Rule 12(b)(6) consideration." Id. (citing Adams, 697 F.2d at 1219). "[W]here the jurisdictional facts are intertwined with the facts central to the merits of the dispute," the Court must determine whether the plaintiff has alleged sufficient facts to invoke subject matter jurisdiction. Id. at 193 (quoting Adams, 697 F.2d at 1219).

Under Rule 12(b)(6), a defendant may move for dismissal upon the ground that a complaint does not "state a claim upon which relief can be granted." In ruling on a 12(b)(6) motion to dismiss, a court "must accept as true all of the factual allegations contained in the complaint." Anderson v. Sara Lee Corp., 508 F.3d

6

**MEMORANDUM OPINION AND ORDER GRANTING MOTION TO DISMISS**

181, 188 (4th Cir. 2007) (quoting Erickson v. Pardus, 551 U.S. 89, 94 (2007)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986).

A court should dismiss a complaint if it does not contain "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). Plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A motion to dismiss "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 942, 952 (4th Cir. 1992).

> A motion filed under Rule 12(b)(6) challenges the legal sufficiency of a complaint, Jordan v. Alternative Resources Corp., 458 F.3d 332, 338 (4th Cir. 2006), considered with the assumption that the facts alleged are true, Eastern Shore Mkts, Inc. v. J.D. Assocs. Ltd. P'ship, 213 F.3d 175, 180 (4th Cir. 2000). And the legal sufficiency of a complaint is measured by whether it meets the standards for a pleading stated in Rule 8 (providing general rules of pleading), Rule 9 (providing rules for pleading special matters), Rule 10 (specifying pleading form), Rule 11 (requiring the signing of a pleading and stating its significance), and Rule 12(b)(6) (requiring

> that a complaint state a claim upon which relief can be granted).

Francis v. Giacomelli, 588 F.3d 186, 192 (4th Cir. 2009).

## IV. DISCUSSION

Tunnel Ridge's motion to dismiss [ECF No. 34] is based upon the assertion that Plaintiffs failed to sufficiently plead Tunnel Ridge was a joint employer under the FLSA. ECF No. 35. Plaintiffs responded in opposition to the motion arguing all Alliance entities, including Tunnel Ridge, are alter egos of one another and are the joint employers of Plaintiffs. ECF No. 48. For the reasons that follow, the Court **GRANTS** the motion to dismiss [ECF No. 34] because Plaintiffs failed to sufficiently plead Tunnel Ridge is a joint employer under the FLSA and Salinas v. Commercial Interiors, Inc., 848 F.3d 125 (4th Cir. 2017).

**A. Joint Employer**

The FLSA requires employers to pay their employees overtime pay for every hour worked in excess of 40 hours per week, by one-and-one-half times the employees' regular rate of pay. 29 U.S.C. § 207(a). An "employer" is "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). The FLSA "conditions liability on the existence of an employer-employee relationship, and the employee bears the burden of alleging and proving the existence of

that relationship." See Kerr v. Marshall Univ. Bd. of Governors, 824 F.3d 62, 83 (4th Cir. 2014).

Under the FLSA, "joint employers" share liability, including overtime pay responsibility. Salinas, 848 F.3d at 134.[3]

---

[3] Tunnel Ridge alluded in a footnote to the regulation history of the DOL's "Final Rule." ECF No. 34-1 at 7, n.3. Congress long ago delegated the task of promulgating regulations that define "joint employer" to the Department of Labor ("DOL"). In 1958, the DOL published a rule titled "Joint Employment under Fair Labor Standards Act of 1938," codified by 29 C.F.R. part 791, in which it defined a test to determine whether a joint employment relationship exists. Rescission of Joint Employer Status Under the Fair Labor Standards Act Rule, 86 Fed. Reg. 40939-01 (July 30, 2021). The factors weighing in favor of a joint employment relationship were:
> (1) Where there is an arrangement between the employers to share the employee's services, as, for example, to interchange employees; or
> (2) Where one employer is acting directly or indirectly in the interest of the other employer (or employers) in relation to the employee; or
> (3) Where the employers are not completely disassociated with respect to the employment of a particular employee and may be deemed to share control of the employee, directly or indirectly, by reason of the fact that one employer controls, is controlled by, or is under common control with the other employer."

Id. at 40940. Advancing to January 2020, the test was amended again and became known as the "Final Rule." Under the Final Rule, a joint employer relationship would hinge on whether the employer "(1) [h]ires or fires the employee; (2) supervises and controls the employee's work schedule or conditions of employment to a substantial degree; (3) determines the employee's rate and method of payment; and (4) maintains the employee's employment records." Id. at 40941. Indeed, "control is the touchstone of the joint employer analysis under the Final Rule." New York v. Scalia, 490 F. Supp. 3d. 748, 763 (S.D.N.Y. 2020).

In September 2020, the Southern District Court of New York court held, inter alia, the DOL joint employer relationship test contradicted the FLSA and therefore violated the Administrative Procedure Act. See New York v. Scalia, 490 F. Supp. 3d. 748 (S.D.N.Y. 2020). In essence, the district court concluded 29 C.F.R. § 791.2 was unlawful, except for § 791.2(e). Rescission, 86 Fed. Reg. at 40942. This decision led to a DOL proposal on March 12, 2021, to rescind the joint employer rule. Id. at 40943-44. As it stands, however, the Salinas decision was issued before the Final Rule and has largely remained undisturbed. Thus, this Court remains bound to apply it. See, e.g., United States v. Brown, 74 F. Supp. 2d 648, 652 (N.D.W. Va. 1998) ("[A] district court is bound by the precedent set by its Circuit Court of Appeals, until such precedent is overruled by the appellate court or the United States Supreme Court.").

"Joint employment under the FLSA turns on whether two or more entities are associated with respect to a worker such that the entities share, agree to allocate responsibility for, or otherwise codetermine the essential terms and conditions of the worker's employment." Hernandez v. KBR, Inc., No. 3:22-cv-530-HEH, 2023 WL 3355332, *3 n.6 (E.D. Va. May 10, 2023) (internal citations and quotation marks omitted).

The Court's analysis supporting its discussion of joint employers turns on the six Salinas factors:

> (1) Whether, formally or as a matter of practice, the putative joint employers jointly determine, share, or allocate the power to direct, control, or supervise the worker, whether by direct or indirect means;
> (2) Whether, formally or as a matter of practice, the putative joint employers jointly determine, share, or allocate the power to—directly or indirectly—hire or fire the worker or modify the terms or conditions of the worker's employment;
> (3) The degree of permanency and duration of the relationship between the putative joint employers;
> (4) Whether, through shared management or a direct or indirect ownership interest, one putative joint employer controls, is controlled by, or is under common control with the other putative joint employer;
> (5) Whether the work is performed on a premises owned or controlled by one or more of the putative joint employers, independently or in connection with one another; and
> (6) Whether, formally or as a matter of practice, the putative joint employers jointly determine, share, or allocate responsibility over functions ordinarily carried out by an employer, such as handling payroll; providing

> workers' compensation insurance; paying payroll taxes; or providing the facilities, equipment, tools, or materials necessary to complete the work.

Salinas, 848 F.3d at 141-42.

Specifically, the facts supporting a joint employer theory against Tunnel Ridge are, in full, alleged in Paragraph 33 of the complaint:

> 33. Parent Defendants and Subsidiary Defendants are joint employers as: (1) each Subsidiary Defendant installed the same tracking system and time-keeping system provided by the Matrix Entities; (2) each Subsidiary Defendant chose, in the same way, to willfully ignore the data generated by that system regarding work performed prior to the scheduled beginning of shifts and instead pay workers only from the scheduled beginning of the shifts; (3) the data available to each Subsidiary Defendant were also available to Parent Defendants.

Compl., ECF No. 1, ¶ 33. Such conclusory allegations are insufficient to overcome a Rule 12(b)(6) challenge. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Uniform policies and practices applied by the Parent Defendants to all defendants does not alone support the joint employer theory. See ECF No. 48 at 8, 15.

The Court begins with factor one: whether the Tunnel Ridge, along with the other defendants, jointly share the power to direct, control, or supervise Plaintiffs as employees. As to this factor, Plaintiffs' allegations in the complaint point against Tunnel Ridge being a joint employer with the defendants. While the

Subsidiary Defendants – including Tunnel Ridge - purport to operate the West Virginia Mines, the Parent Defendants **control** the significant aspects of their subsidiaries' coal mining operations. Compl., ECF No. 1, ¶ 29.

Supporting the Court's analysis of factors one, two, and six, there is a clear imbalance of power and ability to determine essential terms and conditions of the Plaintiffs' employment between the Parent Defendants and Tunnel Ridge, the putative joint employers in Plaintiffs' complaint. In addition to exercising authority to hire, fire, discipline, and distribute payroll, the Parent Defendants also exercise control over the pay rates and insurance benefits provided by the Subsidiary Defendants to their nominal employees. Id. ¶ 34. Plaintiffs were governed by Alliance's policies, the parent company of Tunnel Ridge. ECF No. 47 at 3. MGP operates and manages ARLP. ECF No. 47-5, Ex. 4, Form 10-K; ECF No. 47-5-22, Ex. 21. MGP operates in West Virginia through its direct operation of ARLP since 1999. ECF No. 47-5, Ex. 4, Form 10-K; ECF No. 47-10, Ex. 9. Until 2018, and during the relevant period, AROP was also operated by MGP. ECF No. 47-5-22, Ex. 21. AROP is a "near wholly-owned subsidiary of ARLP and acts as the holding company for Alliance Coal." ECF No. 47 at 6; see also ECF No. 47-5, Ex. 4, Form 10-K. "Alliance Coal is a near wholly-owned subsidiary of AROP and acts has a holding company for the various LLCs that own

the coal mines in seven states, including Mettiki Coal WV, LLC and Tunnel Ridge, LLC, which owns the mines in West Virginia." ECF No. 47 at 6; see also ECF No. 47-5, Ex. 4, Form 10-K. It is the Parent Defendants who initiated business by developing the Mountain View mine in 2005 in Tucker County, West Virginia, and announcing the opening of the Tunnel Ridge Mine in 2008 in Ohio County, West Virginia. ECF No. 47-18, Ex. 17. Parent Defendants ran mining operations in the state of West Virginia, including the day-to-day operations, and have control over Tunnel Ridge. Plaintiffs failed to meet factors one, two, and six under Salinas.

The third factor, the permanence of the working relationship, is neutral in this analysis. Neither party argued this factor in their briefs. See ECF Nos. 34-1, 48. The Court finds nothing in the complaint or arguments by counsel supporting this factor.

The fourth factor, common control over Tunnel Ridge and the other joint employers, supports Plaintiffs' theory. However, even if this Court were to find Tunnel Ridge, as a Subsidiary Defendant of the Parent Defendants [see Compl., ECF No. 1, ¶¶ 13-15], under the common control of the joint employers, this factor does not overcome the rest. See Wright v. Waste Pro USA Inc., No. 2:17-cv-02654, 2019 WL 3344040, *13 (D.S.C. July 25, 2019) (weighing the

Case 2:21-cv-00008-TSK   Document 153   Filed 09/01/23   Page 14 of 18   PageID #: 2022
Rettig & Hinkle v. Alliance Coal, LLC, et al.                    2:21-CV-08
**MEMORANDUM OPINION AND ORDER GRANTING MOTION TO DISMISS**

fourth Hall[4] factor in favor of the plaintiff but still finding allegations insufficient to support the joint employer theory).

Finally, factor five, whether the work performed is at a location controlled by one or more of the joint employers, weighs against Plaintiffs because they allege they performed work as coal miners at the Mettiki Mine, and not the Tunnel Ridge location. Compl., ECF No. 1, ¶¶ 6-7.

Because Plaintiffs have failed to demonstrate Tunnel Ridge is a joint employer, the Court grants the motion to dismiss under both Rules 12(b)(1) and 12(b)(6). Indeed, standing is proven when plaintiffs have an injury in fact, causation, and redressability. See Sierra Club v. United States Dep't of the Interior, 899 F.3d 260, 283 (4th Cir. 2018). Plaintiffs' standing to bring an FLSA claim is predicated on the existence of the employer-employee relationship because "[p]laintiffs' injuries are only traceable to, and redressable by, those who employed them." Crumbling v. Miyabi Murrells Inlet, LLC, 192 F.Supp.3d 640, 644 (D.S.C. 2016). There being no employer-employee relationship between Tunnel Ridge and Plaintiffs, Plaintiffs' claims fail against Tunnel Ridge under both Rules 12(b)(1) and 12(b)(6).

**B. Alter Ego**

---

[4] Hall v. DIRECTV, LLC, 846 F.3d 757, 769-70 (4th Cir. 2017), cert. denied, 138 S. Ct. 635 (2018) describes the same factors also referred to as the Salinas factors.

Plaintiffs attempt to attach liability to Tunnel Ridge via the alter ego theory. Judge Bailey recently discussed the theory of alter ego relationships. See Hopper v. Jay-Bee Oil & Gas, Inc., No. 5:20-CV-101, 2023 WL 2824489 *2 (N.D.W. Va. Mar. 15, 2023).

> A claim of an alter ego relationship is not itself an independent cause of action but a means of imposing liability on one corporation/business for the alleged wrongful acts of another related corporation/business:
>
> The doctrine of piercing the corporate veil is typically employed by a third party seeking to go behind the corporate existence in order to circumvent the limited liability of the owners and to hold them liable for some underlying corporate obligation. Thus, an attempt of a third party to pierce the corporate veil does not constitute a cause of action independent of that against the corporation; rather, it is an assertion of facts and circumstances that will persuade the court to impose the corporate obligation on its owners.[ ] It is a means of assessing liability for the acts of a corporation against an equity holder in the corporation.[ ] It is not itself an action but is merely a procedural means of allowing liability on a substantive claim.[ ] 18 Am. Jur. 2d Corporations § 48 (citations omitted).

Id. "[T]he doctrine of alter ego . . . liability recognizes that a parent corporation can be liable for the acts of its subsidiaries or that sister corporations can be liable for the acts of one another." Id. at *5.

The sole allegation in the complaint alleging alter ego theory states:

> 20. The unlawful acts alleged in this Complaint were committed by Defendants and/or their officers, agents, employees, or representatives, including as alter egos of one another, while actively engaged in the management of Defendants' businesses or affairs and with the authorization of Defendants.

Compl., ECF No. 1, ¶ 20. Because Plaintiffs' sole claim against Tunnel Ridge, that is, violation of the FLSA, fails, Plaintiffs have alleged no facts to support the alter ego theory against Tunnel Ridge. One conclusory allegation is, again, insufficient to attach liability to Tunnel Ridge via the alter ego theory. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

### C. Leave to Amend

In its response to Tunnel Ridge's motion to dismiss, Plaintiffs request leave to amend their complaint [ECF No. 48 at 18]. At this stage, Plaintiffs may amend their complaint only with written consent of the defendants or leave of the Court. Fed. R. Civ. P. 15(a)(2). While the Court recognizes that it should freely give leave to amend "when justice so requires," id., Plaintiffs have not properly requested such relief in this case.

A response brief to a motion to dismiss is not an appropriate means to request leave to amend a complaint. See Francis v. Giacomelli, 588 F.3d 186, 197 (4th Cir. 2009). Federal Rule of Civil Procedure 7(b)(1) provides that "[a] request for a court order must be made by motion." Likewise, under Local Rule of Civil

Procedure 15.01, a party seeking leave to amend a pleading must submit a motion requesting such relief and attach the proposed amended pleading.

> [W]here, as here, the plaintiff fails to formally move to amend and fails to provide the district court with any proposed amended complaint or other indication of the amendments he wishes to make, the district court does not abuse its discretion in failing to give the plaintiff a blank authorization 'to do' over his complaint.

Estrella v. Wells Fargo Bank, N.A., 497 F. App'x 361, 362 (4th Cir. 2012) (citing Francis, 588 F.3d 186, 197 (4th Cir. 2009) (internal alterations omitted)). Because Plaintiffs have not moved to amend the complaint and have not provided a proposed amendment, the Court denies the request for leave as procedurally deficient.

## V.   CONCLUSION

Because Plaintiffs do not allege facts to support their joint employer theory against Tunnel Ridge, the Court **GRANTS** the motion to dismiss and **DISMISSES WITH PREJUDICE** Tunnel Ridge from the civil action under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. ECF No. 34.

It is so **ORDERED.**

The Clerk is directed to transmit copies of this Memorandum Opinion and Order to counsel of record.

**MEMORANDUM OPINION AND ORDER GRANTING MOTION TO DISMISS**

**DATED:** September 1, 2023

*/s/ Thomas S. Kleeh*
THOMAS S. KLEEH, CHIEF JUDGE
NORTHERN DISTRICT OF WEST VIRGINIA